Tescher v. Merea.

Filed May 7, 1889.

---

No. 13,680.

## TESCHER v. MEREA.

PROMISSORY NOTE.—*Given for Patent-Right.*—*Violation of Statute.*—*Innocent Holder.*—A negotiable promissory note, fair upon its face, is valid in the hands of an innocent holder for value, although taken by the payee in violation of the statute regulating the sale of patent-rights.

SAME.—*Presumption of Holder's Good Faith.*—*What Circumstances will Overthrow.*—The circumstances which will overthrow the presumption that the purchaser of commercial paper acquired it in good faith, must be pointed and emphatic and lead directly and irresistibly to the conclusion that the purchaser had notice.

SAME.—*Notice of Fraud.*—*Abstaining from Inquiry.*—The ultimate fact to be found is not whether the purchaser might have ascertained or could have known that the note was fraudulently obtained, but whether he in fact knew it, or acted in bad faith in abstaining from inquiry.

SAME.—*"Usual Course of Business."*—*Meaning of Phrase.*—The phrase "in the usual course of business," is not confined to persons engaged habitually in banking or purchasing notes; but one who in good faith purchases a negotiable note before maturity, for value, or who takes it in payment of an antecedent debt, is not out of the usual course of business.

SAME.—*Payable to Bearer.*—A note payable to the order of A. B. or bearer, is in legal effect the same as if payable simply to bearer, and the title passes to whomsoever becomes the lawful holder.

From the Hamilton Circuit Court.

*W. S. Christian, I. W. Christian* and *G. S. Christian,* for appellant.

*R. R. Stephenson* and *W. R. Fertig,* for appellee.

MITCHELL, J.—Tescher commenced suit against Merea and Haverstick to recover the amount due on a promissory note, payable in a bank in this State "to the order of H. Richwine or bearer." The note had been transferred to the plaintiff by delivery, for a valuable consideration, before due. The material facts were uncontroverted. Richwine had sold and assigned to the makers of the note an interest in a certain patent-right, and had taken the note in suit in payment therefor. The sale was made in violation of the statute which makes it a misdemeanor for any person to sell or barter any patent-right without first filing with the clerk of the court duly authenticated copies of the letters-patent. The statute which requires the words " given for a patent-right " to be inserted in the body of any obligation taken in such a transaction, was also disregarded. The evidence showed that the plaintiff was a clerk in a clothing store at the time he purchased the note, and that he had no notice or knowledge as to the consideration for which it was given ; that he knew the makers of the note and was acquainted with their signatures, and that he purchased and paid for it, relying upon the genuineness of their signatures and upon the fact that it was mercantile paper, without making inquiry as to the consideration upon which it was given. The note calls for the payment of seventy-five dollars in six months, with eight per cent. interest and attorney's fees, and the plaintiff paid about sixty-five dollars in cash for it.

It was held, in a case quite analogous to the one now presented, that a promissory note, fair upon its face, which contained the required words of negotiability, although taken by the payee in violation of the above mentioned statute, was nevertheless a valid obligation in the hands of an innocent

holder for value. *New* v. *Walker*, 108 Ind. 365; *Sondheim* v. *Gilbert*, 117 Ind. 71.

Commercial paper is regarded with favor on account of its convenience in mercantile affairs, and so the rule is that nothing short of fraud or bad faith, not even negligence, is sufficient to defeat the right of a holder for value and without notice to recover. *Collins* v. *Gilbert*, 94 U. S. 753. One who takes such a note before maturity, for value, is not affected by any infirmity not apparent on the face of the paper, nor by any equities between the original parties, unless they are brought to his notice. Possession and production of the note raise a presumption that it was purchased in good faith, and import, *prima facie*, that the holder acquired it for value, without notice and in the usual course of business. *Hall* v. *Allen*, 37 Ind. 541; *Commissioners, etc.*, v. *Clark*, 94 U. S. 278, 285; 1 Daniel Neg. Insts., section 812.

It is said, however, that the learned court below gave judgment against the plaintiff because he purchased the note without inquiry, and under such circumstances as to show that he abstained from making inquiry from a belief that to inquire would disclose the vice inherent in the note.

It is undoubtedly true that the conclusion may be deduced that a purchaser had notice when there is such a combination of circumstances shown as to create a distinct legal presumption that he was acting collusively and in bad faith, and that he must have known the facts without inquiring. The circumstances which will justify such an inference must, however, be pointed and emphatic, and must lead directly and irresistibly to the conclusion that the purchaser had notice, before the presumption that he purchased the note in good faith can be overthrown. Circumstances calculated to awaken suspicion merely are not sufficient. *Farrell* v. *Lovett*, 68 Maine, 326; 1 Daniel Neg. Insts., sections 795, 796.

The ultimate fact to be found is not whether the endorsee might have ascertained or could have known that the note was fraudulently obtained, but whether he in fact knew it,

or acted in bad faith in abstaining from inquiry. As has been said, it is a question not of negligence or diligence, but one of honesty and good faith. *Carroll* v. *Hayward*, 124 Mass. 120; *Kellogg* v. *Curtis*, 69 Maine, 212.

There is an entire absence of evidence in the present case tending to show collusion or bad faith on the part of the plaintiff, nor were there any facts or circumstances tending to raise a presumption that he had any knowledge of the transaction out of which the note originated, or that the payee was engaged in the sale of patent-rights. The rate of discount was not of itself, without anything else, calculated to raise any suspicion that the note was issued in violation of law, and we are unable to discover in the evidence any other circumstance that even might tend to suggest any irregularity inherent in the note. It does not appear, nor is it charged, that there was any fraud in the inception of the paper, or that the consideration was not complete and perfect, or that there is any reason why the makers ought not to pay it, except that the paper was taken in violation of the statute regulating the sale of patent-rights.

Where fraud or illegality in the inception of a note is shown by the maker, the burden is on the endorsee to show himself to be an innocent holder. *New* v. *Walker, supra,* and cases cited. Applying the rule above stated to the note in suit, and yet the evidence shows, without any contradiction whatever, that the plaintiff had no notice.

It is said, however, that the note was not purchased in the usual course of business; that the plaintiff was not engaged in the business of purchasing notes. The phrase " in the usual course of business," signifies according to the usages and customs of commercial transactions, and its application to the purchase of a mercantile note is not confined to persons engaged habitually in banking or purchasing notes. One who in good faith purchases a negotiable note before maturity, for value, or who takes it in payment of an antecedent debt, is not out of the usual course of business. *Baily*

v. *Smith*, 14 Ohio St. 396 ; *Kellogg* v. *Curtis, supra ; Roberts* 'v. *Hall*, 10 Am. Law Reg. 760.

There is no force in the suggestion that the note was not payable to bearer, and that the title did not pass by delivery. *Melton* v. *Gibson*, 97 Ind. 158. A note payable to the order of A. B. or bearer is in legal' effect the same as if payable simply to bearer, and the title passes to whomsoever may become the lawful holder.

In the absence of any evidence to support the finding and judgment of the court, the judgment is reversed, with costs.

Filed May 7, 1889.