## CONTINENTAL INS. CO. OF CITY OF NEW YORK *v.* INSURANCE CO. OF STATE OF PENNSYLVANIA.

### (*Circuit Court of Appeals, Second Circuit.* March 15, 1892.)

1. **FRAUD—EVIDENCE—ADMISSIBILITY.**

   In an action by one insurance company against another, plaintiff alleged that, through the fraud of an agent employed by both companies, it had paid large amounts on marine losses which defendant ought to have paid; that the fraud was effected by shifting the risks after knowledge of disaster,—in some cases by reinsuring with plaintiff risks originally insured by defendant, in others by substituting plaintiff for defendant as the original insurer, and in still others by concealing reinsurance effected by defendant upon risks originally insured by plaintiff, thus throwing the whole burden of the loss upon plaintiff. *Held,* that in proving the frauds it was competent to show that during the same period the agent was committing a series of similar frauds upon other companies, for which he was agent, for the benefit of defendant; and that all the entries made in his books by his clerks pursuant to his instructions, in effecting the frauds, as well as the instructions themselves, both general and special, were admissible as part of the *res gestæ.*

2. **SAME—ACCOUNT BOOKS.**

   It was proper to mark as exhibits the pages containing the false entries, and the fact that such pages, as they stood and as they went to the jury, contained other entries in no wise concerned with the case, was immaterial when the plaintiff only proved and read the fraudulent entries, and the objections taken were to these only.

3. **SAME—EVIDENCE OF PERJURED WITNESS—CORROBORATION.**

   It was immaterial whether certain entries, testified to by a witness whose former perjury was conceded, did or did not corroborate his testimony, such evidence being offered and received, not as independent evidence, but as part of the testimony of the witness himself,—as memoranda made by him at the time, and sworn to be correct, of dates, names, figures, and values, which no witness could be expected to carry in mind.

4. **SAME—INSTRUCTIONS.**

   Certain evidence was introduced which would tend to show knowledge by defendant of the frauds practiced in its favor, if supplemented by other proof. But plaintiff failed to so supplement it. The court charged that no knowledge was proved. *Held* that, in the absence of a motion to strike out, this charge was all that was required.

5. **SAME—EVIDENCE OF DATES.**

   The dates when reinsurance was effected nowhere appeared on the books, and could only be fixed by the position of the reinsurance entries, with relation to other entries which were dated. *Held,* that it was competent, for this purpose, for a witness to testify from entries made by himself, although such entries disclosed other fraudulent reinsurances.

6. **SAME—COURSE OF BUSINESS.**

   Evidence showing the line of insurance and reinsurance carried by defendant company during the year was admissible as disclosing a general course of business, whereby defendant was found to be reinsured when there was a loss to be paid, and not to be reinsured, however large its risk, when there was none; for from this fact, in connection with others, it might fairly be inferred that the results were secured, not by sound judgment or good chance, but by fraudulent practices.

7. **SAME.**

   That defendant received the fruits of the agent's frauds sufficiently appeared from the fact that in each case of loss upon a risk insured by defendant, and ostensibly reinsured in part by plaintiff, the agent adjusted the loss, paid it out of funds of defendant in his hands, charged the whole amount to defendant, drew a draft on

plaintiff for its proportion, credited the proceeds thereof to defendant, and sent plaintiff a receipt signed by him as agent, acknowledging payment of the amount received; and that when a loss was settled he informed defendant that the transaction was closed, stating its net loss after deducting the reinsurance, and, in his monthly statement, informing it that out of its funds in his hands he had paid its whole loss by *appropriating therefrom the amount of the net loss.*

8. SAME.

It was immaterial that the moneys were not physically transferred by the agent to defendant company, or that, after he thus used them to extinguish its debts, he became and remained indebted to it for a larger sum than the aggregate of these sums.

9. SAME.

The fact that the agent had charged the plaintiff with the amount of reinsurance on a certain loss, and had credited defendant with a like amount in cash, was sufficient *prima facie* evidence that he had paid such reinsurance for plaintiff, though it was not shown that he had, as usual, drawn a draft on plaintiff, or that plaintiff had remitted the sum to him.

10. SAME.—ADOPTION OF ANOTHER'S FRAUD.

The fact that defendant was ignorant of the frauds at the time is no defense, for the rule applies that one seeking to avail himself of the advantages of the fraud of another, after knowledge of the fraud, must be held to adopt the fraud, though at the time he was ignorant thereof.

Error to the Circuit Court of the United States for the Southern District of New York.

At Law. Action by the Insurance Company of the State of Pennsylvania against the Continental Insurance Company of the City of New York to recover $33,105, with interest. Defendant in its answer, by way of counterclaim, demanded judgment against plaintiff for $5,252.88, with interest. Verdict for plaintiff in the sum of $16,420.73, and motion for new trial denied. Judgment for said amount, and for interest thereon, the whole amounting to $18,732.20. Defendant brings error. Affirmed.

*Butler, Stillman & Hubbard,* (*Thomas H. Hubbard* and *John Notman,* of counsel,) for plaintiff in error.

*Evarts, Choate & Beaman,* (*Treadwell Cleveland,* of counsel,) for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. This is a writ of error by the defendant in the suit below to review a judgment of the circuit court for the plaintiff entered upon the verdict of a jury. The assignments of error impugn the rulings of the trial judge in admitting evidence, and in refusing to instruct the jury to find a verdict for the defendant as to all, and especially as to several, of the causes of action in controversy. Error is also assigned of some of the instructions given to the jury.

The complaint contains 23 counts, each of which sets forth a different and distinct cause of action. Each of them charges that, by the fraudulent acts of an agent employed by both the plaintiff and defendant, the plaintiff was made to pay to a third party a sum of money which should have been paid by the defendant. The averments general to all are, in substance, that in the years 1882 and 1883 one Lorenzo Dimick was the general agent at Buffalo of the plaintiff, the defendant, and also of the two other insurance companies having local agents in other places, who accepted applications and issued certificates for marine insurance; that

the general agent conducted at Buffalo the whole business of inland marine insurance for the several companies, and, in the usual course of his business, issued policies of insurance and effected reinsurances in behalf of the several companies for risks accepted by him, or by the local agents, and adjusted all losses arising in the business by drawing drafts on the company insuring, or paying them, and charging the amount against its moneys in his hands. Seventeen of the counts set forth causes of action of a similar character, and, in effect, allege that, after Dimick had received information of a marine peril affecting a particular risk which had been insured by the defendant, he fraudulently shifted the risk, or some part of it, upon the plaintiff, by reinsuring it in the name of the plaintiff, and, when loss ensued which the defendant was in fact liable to pay, he caused the plaintiff to pay it as a reinsurance upon the risk; that each of the payments so made was received by the defendant, and was obtained through the fraudulent acts of Dimick, done with the intention of cheating and defrauding the plaintiff for the benefit of the defendant. These 17 causes of action relate to different risks, and involve different voyages, dates, and amounts. The fifteenth and nineteenth counts contain similar averments, except that the risks were first insured by the defendant, and, after information of peril or disaster was received, Dimick substituted the plaintiff as the original insurer. Four of the other counts, the twentieth to the twenty-third, inclusive, are for similar causes of action, except that they allege that risks were originally insured by the plaintiff, and had been reinsured by the defendant, but, after news of peril or disaster, the reinsurance was concealed so as to relieve the defendant from the whole or part of its obligation. It appeared upon the trial that separate books were kept by Dimick for each company, in which the particulars of the insurances and reinsurances were entered; that the local agents who accepted applications and issued certificates for insurance transmitted reports, called "daily reports," to Dimick, specifying the particulars of the risks taken by them; that the particulars of these risks were entered in the books kept at Buffalo; that twice in each week Dimick reinsured risks which had been taken by the local agents, distributing the amount of reinsurance between the several companies as he saw fit; and that reports were forwarded by him, showing the particulars of risks insured or reinsured, daily to the defendant, and twice in each week to the other companies. According to his course of business with the plaintiff and the defendant, he was to remit to each on the 20th of every month all moneys in his hands belonging to it, and render to each a full abstract of his business with it, including a statement of losses paid and the proofs relating to the same. The evidence authorized the jury to find that in many cases, after a risk had been insured by a local agent with the defendant, or by Dimick himself, he received news of peril, by telegram or otherwise, and would reinsure the risk with one or more of the other companies, by causing appropriate entries to be made in the books, and, in some cases, would cancel the original insurance, and substitute one or more of the other companies in the place of defendant, and, if the risk had been originally insured with

the plaintiff, or either of the companies other than the defendant, and reinsured in part with the defendant, would cancel the reinsurance with the defendant, and transfer it to one or more of the other companies; that in these cases the reports transmitted by him to the several companies would not give any information of the real transaction, but only of the substituted insurance; that when a loss was incurred in any of these cases, he would adjust it on the basis of the fraudulent insurance or reinsurance, and obtain payment thereof from the company or companies apparently liable therefor, by drawing drafts, or by charging the amount against funds in his hands, thus exonerating the defendant to the extent to which he had fraudulently relieved it of its original obligation; and that all this was done by means of fraudulent instructions by Dimick to his clerks, by fraudulent entries in his books and papers, and by fraudulent statements in his reports and accounts rendered. Evidence was given by the plaintiff upon the trial tending to prove the particular frauds in suit, and also tending to prove similar frauds by Dimick, committed in some instances as part of the same transaction, and in others in a different transaction, about the same time, by which he shifted losses of the defendant upon one or both of the other two companies. The theory of the case for the plaintiff was that these frauds were part of a deliberate system devised by Dimick to defraud the plaintiff for the benefit of the defendant, from motives of personal interest on his part. The evidence did not show that defendant had any knowledge of the fraudulent acts of Dimick.

In considering the assignments of error, those only will be noticed which have been relied upon at the bar, and in the brief of the counsel for the plaintiff in error. As to those which relate to the admission of evidence, a few general considerations are pertinent. In actions founded upon fraud, where intent is a necessary ingredient, the largest latitude is allowed in the introduction of evidence, circumstantial as well as direct, to disclose the motive and prove the fraud; and any evidence having a tendency to prove the offense, though it may be slight, is not incompetent. Such actions necessarily give rise to a wide range of investigation, for the reason that the motive of the defendant is involved in the issue. Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry, or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. *Castle* v. *Bullard*, 23 How. 172, 187; *Hubbard* v. *Briggs,* 31 N. Y. 518, 538; *Beardsley* v. *Duntley*, 69 N. Y. 577, 581.

The case of fraud is one of the few exceptions to the general rule that other offenses of the accused are not relevant to establish the main charge; and it is the settled rule that, to establish fraud in a given transaction, evidence is admissible to show the commission of similar frauds

in similar transactions had with other persons about the same time. *Lincoln* v. *Claflin*, 7 Wall. 132; *Butler* v. *Watkins*, 13 Wall. 456; *Insurance Co.* v. *Armstrong*, 117 U. S. 591, 6 Sup. Ct. Rep. 877. It was entirely competent for the plaintiff to show that, during the period covered by the frauds in suit, Dimick was committing other and a series of similar frauds upon the other insurance companies for the benefit of the defendant. All the entries made in Dimick's books or papers by his clerks, pursuant to his directions, were the acts of Dimick, and the entries themselves, as well as his instructions, general or special, to the clerks, were verbal acts, and, as such, a part of the *res gestæ* of the transactions which were sought to be shown. The evidence was therefore properly admitted, which tended to show that, in shifting any one of the particular losses in suit from the defendant to the plaintiff, Dimick did so by reinsuring it in part with the plaintiff, and in part with the other two companies for which he was an agent; or which tended to show that, in independent transactions occurring about the same time, he committed similar frauds, or attempted to, upon one or both of the other two companies; and the books and papers containing the entries by means of which these frauds were in part effected, as well as testimony of the general and special instructions of Dimick to his clerks, were competent evidence. It is of no consequence whether the evidence consisting of such entries was introduced and admitted upon a different theory of its competency; it was competent for the reason stated, and, if it also tended to corroborate witnesses whose credibility was doubtful, that circumstance did not impair its competency.

We proceed to notice more particularly some of the rulings in admitting testimony which are complained of. The pages from the insurance registers kept by Dimick contained, it is true, entries as to many risks which were in no wise concerned with this case, but no specific objection was taken on that ground. The pages were offered and marked as exhibits, properly so, even if for identification only, and the plaintiff proved and read the entries upon them relating to insurances of risks taken on vessels which were the subject of the action. To these objection was taken as immaterial and irrelevant, and in the light of that objection only is the action of the trial judge to be reviewed. He cannot be held to have erred in allowing the jury to see the entries as they stood on the pages, in the absence of a specific request that the other entries on the page should in some way be kept from them, and, in the absence of anything to that effect on the record, we cannot assume that he allowed entries which so plainly had nothing to do with the case to be read to the jury. *People* v. *Dimick*, 107 N. Y. 13, 25, 14 N. E. Rep. 178. The entries which were read to the jury against the defendant's objection were in each instance indisputably parts of the transaction in question, which was as much a reinsurance of the defendant as it was an insurance in the plaintiff. The proposition to be established was that reinsurances of the defendant's risks were effected with the plaintiff, after notice of disaster, to save it from loss. Dimick's relations with the three reinsuring companies were such that he was able to effect reinsurances

in all of them without exciting suspicion.    The single fact that, in the case of the Ackley, for instance, where the defendant had $38,900 at risk, only the comparatively small sum of $2,500 was reinsured in the plaintiff, might indicate the mere exercise of ordinary discretion; but simultaneous reinsurance of all the amount at risk, (except $5,000,) in the other companies, might well be persuasive to the inference that he did so after the receipt of information that led him to believe the vessel was a loss, other evidence tending to show that whenever there was no loss there was no reinsurance.    If the transaction, as plaintiff claimed, was an effort to shift the burden of a known loss from the defendant's shoulders, it was not completed till all that was done by Dimick to effect that object had been accomplished.

Whether the various entries testified to by the witnesses whose former perjury was conceded did or did not corroborate their evidence on this trial is not material on the question of their admissibility.    They were offered, not as independent evidence, or received as such, but were a part of the testimony of the witness himself, memoranda made by him at the time, sworn to by himself to have been true statements when made, and minuting a multitude of dates, names, figures, and values, the details of which no witness could be expected to retain in his unaided memory.    As such they were admissible in connection with his testimony.    *Insurance Co.* v. *Weides*, 14 Wall. 375.    They were not "unproved copies of unproved accounts," as in *Mining Co.* v. *Fraser*, 130 U. S. 611, 619, 9 Sup. Ct. Rep. 665.

To the refusal of the trial judge to strike out evidence as to instructions given by Dimick to deduct certain percentages from premiums, no exception was taken, and it cannot be considered here.    The testimony as to the James Wade and the Gleniffer, not included in this action, was offered to show knowledge on the part of defendant's manager in New York of Dimick's practice of protecting defendant by reinsurance when he heard of loss or peril to the property insured.    It tended to prove this if supplemented by further proof.    Plaintiff failed to so supplement it, and the court expressly charged that no knowledge was proved on the part of the defendant, which is all that was required, (*Pennsylvania Co.* v. *Roy*, 102 U. S. 451,) certainly, in the absence of a motion to strike out, or to instruct the jury that all evidence as to these two vessels was to be disregarded.

The testimony as to entries touching the Coyne, Jennie Matthews, Potomac, and California, vessels not in this action, was offered to prove dates of reinsurances which were the subject of suit.    The dates when reinsurance was effected nowhere appeared, and it was not to be expected that any witness, even if he remembered the fact of reinsurances, could carry all the dates in his unaided memory.    It was only by the position of the entries in the books, relatively to other entries where dates were minuted, (such as acceptance of original risk, reports to the companies, etc.,) that the witness who made the entries was able to testify that the effecting of the reinsurance in issue was on, before, or after some calendar date.    To an extent sufficient to enable him to fix such date, it

was proper for the witness to testify from the entries he had himself made, and we cannot find that the testimony exceeded that limit. If competent to prove the dates, as we are satisfied it was, it was 'admissible, although it also disclosed other fraudulent reinsurances. *Dutchess Co.* v. *Harding*, 49 N. Y. 321, 325.

The defendant's protection against inferences from the other frauds, thus incidentally shown, lay in a request to direct the jury to disregard them. But, as we have before shown, it was entitled to no such direction. The evidence was proper for the jury to consider as showing fraudulent acts similar to those which were the subject of complaint, and performed at the same time. The evidence showing the lines of insurance and reinsurance which the defendant had carried during the year in question was relevant and material. Showing, as it did, a general system or course of business, the result of which was that the Continental was found to be reinsured when there was a loss to be paid, and not to be reinsured, however large its risks, when there was none, it was a fact from which, taken in connection with others, it might be fairly inferred that these results were secured, not by the exercise of sound judgment, nor by rare good chance, but by fraudulent practices of the kind testified to by Dimick's accomplices.

The assignment of error based upon the refusal of the trial judge to direct a verdict for the defendant rests upon the proposition that it did not appear by the evidence that the defendant had received the fruits of any of the frauds committed by Dimick upon the plaintiff. It was proved that in each case of a loss upon a risk insured by the defendant, part of which had been ostensibly reinsured by the plaintiff, Dimick adjusted the loss, and paid it to the assured out of funds of the defendant in his hands, charged the whole amount to the defendant in his account with it, drew a draft on the plaintiff for its proportion as a reinsurer, credited the proceeds of the draft to the defendant in his account, and sent the plaintiff a receipt, signed by him as agent for the defendant, acknowledging payment of the amount received. Whenever a loss was settled he informed the defendant that the transaction was closed, and of its net loss after deducting the reinsurance, by sending to it the "loss pocket;" and in each monthly statement he informed the defendant that out of its funds in his hands he had paid its whole loss by appropriating therefrom only the amount of the net loss.

The moneys thus received and applied by Dimick to pay the defendant's losses were received by the defendant as completely, for all practical purposes, as they would have been if he had transmitted them to the defendant, and the defendant had paid them over to the assured in settlement of the loss. *Pratt* v. *Foote*, 9 N. Y. 463. The law looks at the substance of the transaction, and is quite unconcerned about its form. The defendant got the benefit of these moneys because they were applied to extinguish its debts to the assured, and because they increased its funds in the hands of its own agent. It is quite immaterial that the moneys were not physically transferred by Dimick to the defendant, or that, after Dimick received them, and had used them to extinguish the

debt of the defendant, he subsequently became and remained indebted to the defendant in an amount larger than the aggregate of these moneys. Dimick not only assumed to act in obtaining them as agent for the defendant, but he appropriated them to discharge the debts of the defendant. The case is one for the application of the rule that he who seeks to avail himself of the advantages of the act of another, after knowledge of its fraudulent character, must be held to adopt the fraud, although at the time of the act he was ignorant of it. The doctrine is elementary, and prevails at law as well as in equity, that a person, though innocent himself, cannot retain an advantage obtained by the fraud of another, in the absence of some consideration moving from himself.

The assignment of error founded upon the refusal of the judge to direct the jury to find for the defendant as to the cause of action for the loss of the cargo of the Manistee proceeds upon the theory that the jury were not authorized to find for the plaintiff upon the uncorroborated testimony of the witness Richard Dimick, who concededly had testified falsely in respect to the same facts upon a previous occasion. There is modern authority to the effect that the question of the credibility of such a witness is entirely one for the jury, when submitted to them under prudential instructions. *Dunn* v. *People*, 29 N. Y. 523, 529; *People* v. *O'Neil*, 109 N. Y. 251, 16 N. E. Rep. 68. But this assignment of error is invalid because of the testimony of the witness Neff, a witness whose credibility was not impeached to the same purport as that of Richard Dimick.

The assignment of error, because the judge refused to direct the jury to find a verdict for the defendant as to the cause of action for the loss of the cargo of the Nyack, proceeds upon the ground that there was no evidence that the plaintiff paid any part of the loss. It was not shown that Dimick had drawn any draft on the plaintiff for the amount of its reinsurance upon this loss, or that the plaintiff had remitted the amount to him; but it did appear that he charged it with the amount, and credited the defendant with a like amount in his cash book. As Dimick was the common agent of both parties, this was sufficient *prima facie* evidence that he had paid the reinsurance for the plaintiff. If he had paid it, the case was as though the plaintiff had paid it. Unless he or the plaintiff had paid it, the defendant would not have been entitled to be credited, as it was, for the amount. The assignments of error thus considered are the only ones which seem to require discussion.

The judgment is affirmed.