## BATESVILLE BANK *v.* LEHNER.

[No. 6,546. Filed March 30, 1909.]

1. BILLS AND NOTES.— *Fraud.— Illegality.— Burden of Proof.—* Where the maker of a note, in an action thereon, answers fraud or illegality in the procurement thereof, the burden of proving that he is an innocent purchaser thereof rests upon the holder. p. 460.

2. BILLS AND NOTES.—*Fraud.—Possession.—Presumptions.—Innocent Purchaser.*—Where no answer of fraud or illegality in the procurement of a note is made, the possession and production of the note constitute *prima facie* proof that the plaintiff is an innocent holder, for value, in due course of business, the burden being upon the maker to show otherwise. p. 460.

3. BILLS AND NOTES.—*Negotiability.—Innocent Purchasers.—Notice.—Sufficiency.*—Where a bank intending to purchase a bank-

able note given as part of the purchase price of an organ, wrote a letter to the maker inquiring if the organ had been received, and whether it was satisfactory and saying that the bank intended to buy the note, received from such maker an answer that the organ had just arrived and would be erected within eight or ten days, and asking the bank to inquire again in a few days, and the maker eight days afterward wrote to the bank that the organ had not been completely erected, that he was well pleased so far, and that he would write later, and he executed the note seven days later, the bank purchasing the same without further notice, such bank is an innocent purchaser for value, and the maker cannot defend on the ground of a breach of contract by the payee. p. 461.

4. BILLS AND NOTES.—*Innocent Purchasers.—Notice.*—Suspicious circumstances, to be sufficient to put an intending purchaser of bankable paper on inquiry, must be of such character that bad faith on the part of such purchaser, in failing to make further inquiry, can be reasonably inferred therefrom. p. 462.

From Vigo Circuit Court; *James E. Piety,* Judge.

Action by The Batesville Bank against Francis Lehner. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Thomas S. Cravens,* for appellant.

*Davis & Davis,* for appellee.

HADLEY, J.—This is a suit on a promissory note, payable in bank, executed by the appellee to the Barckhoff Church Organ Manufacturing Company, of Pomeroy, Ohio, and assigned before maturity to the appellant. Appellee answered (1) by general denial; (2) by plea of payment, and also, by way of counterclaim, averred that the note was given as a part of the consideration for the purchase, by St. Joseph's Church of Terre Haute, of which the appellee was the priest, of a church organ, and the contract between the church and the payee in the note is set out in the counterclaim and relied upon by appellee. And it is alleged in this paragraph of the answer that the church organ, in part payment for which the note was given, did not fulfill the terms of the contract, and that it was valueless. This contract provided that the organ company should build an organ in

the church, and that if it did not accord with the terms of the contract, to the satisfaction of the church, the organ company would, at its own cost and expense, make good any defects, or, failing to do this, remove the organ from the church. Said company further agreed to remedy, at its own expense, any defects resulting from any improper material or defective workmanship, and to keep the organ in tune. The church agreed to pay the organ company $3,200 for the organ, $2,000 in cash and $1,200 in a note, payable in one year, on the church's acceptance of the organ. The answer averred notice to the appellant, prior to its purchase of the note sued on, of the facts set up in the counterclaim. The only evidence in the case tending to prove notice to the appellant of any defense to the note sued upon is the following correspondence between the cashier of appellant bank and the appellee. A letter dated September 10, 1900, directed by the cashier to the appellee, is as follows:

"Rev. Father Francis Lehner,
    Terre Haute, Indiana.
Rev. Father:
    Mr. W. J. Brombrage, of Pomeroy, Ohio, informs us he sold your parish one organ for $3,200, of which he is to receive your note for $1,200, and balance in cash. Will you please advise me if he has yet delivered the organ to you, and if all satisfactory, as we intend to cash said note.
    Hoping to be favored with your reply, we remain,
            Very respectfully,
                    C. L. Johnson, Cashier."

To this letter appellee answered as follows:

            "Terre Haute, Indiana, Sept. 11, 1900.
Mr. C. L. Johnson,
    Dear Sir:
    The Barckhoff Church Organ Manufacturing Company is building an organ for St. Joseph's Church, and a note is to be given for $1,200 when completed, in addition to cash payment. However, the organ has just only arrived, and is at present in course of erection in this church. Judging from appearances, I am pleased with what I can see, and hope likewise that it

will prove entirely satisfactory when completed, which will be most likely in eight or ten days. More than this I cannot say presently. Trusting that this will answer your purpose, and if necessary that you inquire more in particular in a few days, I am sincerely and respectfully,

Rev. Francis Lehner, O. M. C.''

Subsequently the appellee wrote the following letter to the cashier:

"Terre Haute, Indiana, September 19, 1900. Mr. C. L. Johnson,

Dear Sir: I am in doubt as to whether I mailed you a reply or not. I know I wrote you, but could not say whether the letter was mailed or misplaced.

Mr. Barckhoff is erecting an organ in our church, but it is not yet complete. Hence I cannot give any recommendation. I am well pleased with what has been done. Will write you later. There is a note of $1,200 to be given.

Very respectfully,

Rev. Francis Lehner, O. M. C.''

The note was executed September 26, 1900, and purchased by appellant on the same day.

1. Where fraud or illegality is charged in the procurement of a negotiable note, the burden is upon the indorsee or holder to show that he is an innocent purchaser for value. *Shirk* v. *Neible* (1901), 156 Ind. 66.

2. But where there is no claim of such fraud or illegality the rule is different. Possession and production of the note raise a presumption that it was purchased in good faith, and import *prima facie* that the holder acquired it for value, without notice and in the usual course of business. In such case the burden is on the maker to show knowledge of the indorsee or holder of the defense asserted, or that he was not a purchaser for value. *Tescher* v. *Merea* (1889), 118 Ind. 586; *First Nat. Bank* v. *Ruhl* (1890), 122 Ind. 279; *Hinkley* v. *Fourth Nat. Bank* (1881), 77 Ind. 475; *Galvin* v. *Meridian Nat. Bank* (1891), 129 Ind. 439.

In this case there is no claim that there was any fraud whatever in the transaction. No defense is made to the note, the general denial and plea of payment being 3. unsupported by any evidence; but appellee seeks to avoid a judgment thereon by a counterclaim for breach of the contract entered into by the parties for the construction of the organ. There is no claim that appellant did not pay full value for the note and before maturity. The only evidence of notice was the correspondence before set out. We can see nothing whatever in this correspondence that even intimates that there was any likelihood that the note, when executed, would not be perfectly good. There is nothing whatever that would cast suspicion on the paper or upon the transaction. On the contrary, it gave every assurance that everything was all right; that the note would not be given until the work was completed, which would carry with it the necessary implication that it would not be given until it was completed to the satisfaction of appellee. The first letter of appellee invited further inquiry, but the letter written eight days later suggested that further information would be given. This latter statement, considered with what had gone before, and the knowledge of appellant that appellee knew that the note, when given, would be purchased by appellant, was calculated to lead appellant to believe that if, for any reason, it would not be safe for appellant to purchase the note appellee would so inform it. When, therefore, seven days later the note was presented to appellant, what could be more natural than for appellant to believe that the contract was completed satisfactorily, and the note was a proper and safe investment. The record further discloses that appellee had no knowledge of any defenses to the note or matters set up in the counterclaim at the time the note was purchased by appellant, and inquiry at that time would have been unavailing.

The rule applicable here is well put in *Tescher* v. *Merea, supra,* where Mitchell, J., speaking for the court, says: "It

is said, however, that the learned court below gave judgment against the plaintiff because he purchased the note without inquiry, and under such circumstances as to show that he abstained from making inquiry from a belief that to inquire would disclose the vice inherent in the note. It is undoubtedly true that the conclusion may be deduced that a purchaser had notice when there is such a combination of circumstances shown as to create a distinct legal presumption that he was acting collusively and in bad faith, and that he must have known the facts without inquiring. The circumstances which will justify such an inference must, however, be pointed and emphatic, and must lead directly and irresistibly to the conclusion that the purchaser had notice, before the presumption that he purchased the note in good faith can be overthrown. Circumstances calculated to awaken suspicion merely are not sufficient.''

Suspicious circumstances, to be sufficient to require investigation, must be of a substantial character, and so strong that bad faith on the part of the indorsee in failing to make such investigation may be reasonably inferred. *Hankey* v. *Downey* (1892), 3 Ind. App. 325; *Tescher* v. *Merea, supra; Hamilton* v. *Vought* (1870), 34 N. J. L. 187; Tiedeman, Com. Paper, §§289-300. Appellee, in his letter of September 11, told appellant that the note would be given when the contract was completed. This was in harmony with the contract between the parties, and on September 19, after reassuring the bank that so far everything was all right, appellee said he would write further. If he changed this position and decided to give the note under a different arrangement before the completion of the work, good faith required that he notify the known intending purchaser of such change, if he desired to maintain his right to set up a counterclaim to said note. Other questions are presented, but may not arise on another trial, and are therefore not decided here.

Judgment reversed, with instructions to grant a new trial.