FIRST NATIONAL BANK OF FORT WAYNE *v.* GARNER.

[No. 23,305. Filed February 28, 1918. Rehearing denied May 28, 1918.]

1. APPEAL.—*Review.*—*Harmless Error.*—The overruling of the plaintiff's demurrer to the fourth paragraph of answer, if error, was rendered harmless by the unchallenged statement in an instruction to the jury "that the fourth paragraph of answer has been withdrawn, leaving the second and third paragraphs in issue." p. 394.
2. BILLS AND NOTES.—*Defenses.*—*"Notice."*—*Presumptions.*—In an action on a negotiable promissory note, where the defense was that the note was procured by fraud and misrepresentation of the payee, and the title of the plaintiff, a purchaser before

maturity, was challenged, §56 of the Uniform Negotiable Instruments Act (Acts 1913 p. 120, §9089d2 Burns 1914)—which provides that to constitute notice of an infirmity in an instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmities or defect, or knowledge of such facts that his action in taking the note amounted to bad faith—did not warrant the jury in drawing an inference that the purchaser had notice of the infirmity or defect, unless the circumstances were pointed and emphatic and were such that they led directly and irresistibly to the conclusion that the purchaser had notice. pp. 394, 397, 402.

3. BILLS AND NOTES.— Defenses.— Instructions.—"Notice."— In an action on a negotiable promissory note by a purchaser before maturity, where the defense relied on was fraud and misrepresentation of the payee, it was reversible error to refuse the plaintiff's requested instructions that, before there could be a verdict for the defendant, the jury must find that the plaintiff knew when it took the note that there was a defense to it, or that it knew such facts that its taking the note under the circumstances amounted to bad faith, and that, to defeat recovery by one who takes a note for valuable consideration in the usual course of trade without knowledge of facts impeaching its validity, it must appear that such holder took the note in bad faith, the court giving instead thereof instructions which tended to mislead the jury into believing that bad faith could be found on proof that plaintiff took the note under circumstances that would have raised a suspicion as to its validity. pp. 394, 396.

4. TRIAL.—Instructions.—Refusal.—Where the court gave an instruction that the note was transferred to the plaintiff for a valuable consideration before maturity, the refusal of the plaintiff's requested instruction to the effect that the transfer of it as collateral security for a pre-existing debt constituted a valuable consideration was not error. p. 398.

5. FRAUD.—Actions.—Essentials.—An action for false representations can be maintained only on the ground that the person complaining was deceived, and, because of the deception, relied on the representations. p. 398.

6. TRIAL.—Instructions.—Refusal.—In an action on a promissory note purchased by the defendant shortly after its execution, where the defense was that the note was obtained through misrepresentation and that the stock for which it was given was worthless, and the proof showed that the defendant did not learn of the true condition of the corporation until several months thereafter, the refusal of the plaintiff's requested instruction that it was the defendant's duty to use diligence to

ascertain whether the representations were false, and, if false, to rescind his contract and offer to return the stock, was properly refused, since it disregarded the defense that the note was worthless, in which case its surrender was unnecessary, and, as the defendant relied on the representations until after the plaintiff had taken the note, his failure to rescind did not harm the plaintiff. p. 399.

7. TRIAL.—*Instructions.*—*Refusal.*—An instruction not purporting to cover all elements of the issues, but correct so far as it went, was not erroneous, where other instructions properly supplied the omitted elements. p. 400.

8. BILLS AND NOTES.—*Actions.*—*Evidence.*—In an action on a note by an indorsee, where the defense was that it was procured by false representation as to the value of corporate stock for the purchase of which the note was given, evidence of similar representations made at about the same time by the president of the corporation to other persons to induce them to purchase stock was admissible for the purpose of showing intent to deceive; and the representations were admissible even though they were not made in the presence of an officer or representative of the plaintiff. pp. 400, 401.

From LaPorte Circuit Court; *James F. Gallaher,* Judge.

Action by the First National Bank of Fort Wayne against Oliver P. Garner. From a judgment for the defendant, the plaintiff appeals. *Reversed.*

*Frank E. Osborn, Lee L. Osborn, Kenneth D. Osborn* and *H. W. Sallwasser,* for appellant.

*M. R. Sutherland* and *Ralph N. Smith,* for appellee.

HARVEY, J.—This is an action on a promissory note for $500, executed by appellee on October 2, 1913, payable to the order of the Egley-Doan Elevator Company, six months after date, at the Farmers and Merchants Bank, of Hanna, Indiana, which note was on October 7, 1913, indorsed by the elevator company and sold to appellant. The amended complaint is in the ordinary form of complaint upon such notes, alleging that, before maturity and for a valuable consideration, payee indorsed the note to appellant. The first paragraph

of answer is a general denial; the second and third paragraphs set out facts to the effect that the note was procured by fraud and misrepresentation of the payee; and the fourth paragraph of answer alleges failure of consideration. Demurrers to these special answers were overruled and appellant filed replies: (1) A general denial; and (2) that the note was endorsed to appellant in due course for a valuable consideration, before maturity and without notice of any defect or defense to said note. Upon the trial the jury returned a verdict for appellee, upon which judgment was rendered. The errors alleged are: (1) The overruling of appellant's demurrer to appellee's fourth paragraph of answer; and (2) the overruling of appellant's motion for a new trial.

Without considering the merits of the fourth paragraph of answer, it may be said that the court in its second instruction informed the jury that "the fourth paragraph of answer has been withdrawn, leaving the second and third paragraphs in issue." The record does not show that the above statement of the court was challenged by either party in any way; and therefore, even though the record does not disclose otherwise that this answer was withdrawn, the overruling of appellant's demurrer to this answer is by this direction to the jury rendered harmless, so far as appellant is concerned; and the judgment of the court below will not on this account be reversed.

Appellant in support of its motion for a new trial complains of the refusal of the court to give instructions Nos. 4 and 5 requested by appellant, and makes the point that the court did not tell the jury what constitutes bad faith; and that these instructions tendered would have furnished the jury this information, in substance, and would have made clear the distinction necessary in such

case between negligence and bad baith. Said instructions Nos. 4 and 5 are as follows:

"No. 4. Before you can return a verdict for defendant in this action, you must find from the evidence that plaintiff knew when it took the note that there was a defense to it, or that it knew such facts that its taking the note under the circumstances amounted to bad faith on its part. The fact, if you should find it to be a fact, that plaintiff when it took the note had knowledge of circumstances which would excite suspicion as to the validity of the note in the mind of a prudent man, or that plaintiff was negligent in taking the note, is not in and of itself sufficient to show bad faith on plaintiff's part. Before you would be justified in inferring that plaintiff acted in bad faith in becoming the holder of the note in suit, the circumstances must be pointed and emphatic, and must lead directly and irresistibly to that conclusion, that it had notice."

"No. 5. The note sued on in this case is a negotiable instrument, the execution of which is admitted by the defendant. You are instructed that the holder of a negotiable paper, who takes it before maturity for valuable consideration, in the usual course of trade, without knowledge of facts which impeach its validity between antecedent parties, holds it by good title. To defeat his recovery thereon, it is not sufficient to show that he took it under circumstances which ought to excite suspicion in the mind of a prudent man. To have that effect, it must be shown that he took the paper under circumstances showing bad faith or want of honesty on his part."

The requested instructions are in accord with the Uniform Negotiable Instruments Act. Acts 1913 p. 120, §56, §9089d2 Burns 1914.

The court instructed the jury that: "The main questions for your decisions are: First: Was fraud com-

mitted in procuring the note.   Second:   Did this plaintiff have. notice of the fraud, or such knowledge of the facts as should have put it on inquiry?"

The second question, above stated, falls short of telling the jury that the main question on this phase of the case was, Did the appellant act in bad faith in the purchase of the note?

Our further inquiry, then, is whether the court in any other given instruction informed the jury that it must find that the appellant acted in bad faith.   It is true the court instructed the jury by instruction No. 10 that the Negotiable Instruments Act "must govern on this subject," and quoted the following portion of the act:   "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."   §56, *supra.*

The court, however, in stating to the jury the effect of facts that might be found by the jury to have been known to the bank, said:   (9)   "The purchaser of commercial paper is not entitled to protection * * * if it is shown that it had such credible information as to put a reasonable person upon inquiry.   In all cases he is required to act in good faith and to use reasonable diligence where such paper is offered for sale under circumstances that are calculated to excite the suspicion of a reasonably cautious person." The court further said:   (11)   "In determining the question as to whether or not the plaintiff in this action accepted the paper under such circumstances as would be calculated to excite the suspicion of a reasonably cautious person, and to put it upon inquiry" the jury had the right to take into consideration the facts shown surrounding the purchase   * *   *."   To say the

least, the instructions given had a very strong tendency to lead the jury to believe that, though they must find bad faith, they were justified in so finding if it appeared from the evidence that the known facts would put a reasonable person upon inquiry or upon the exercise of reasonable diligence, or that they were calculated to excite the suspicion of a reasonably cautious person.

The jury would not be led, by any such instructions to believe that it must find, as stated by Judge Mitchell, in the decision next herein cited: "Such a com-

2. bination of circumstances shown as to create a distinct legal presumption that he (the bank) was acting collusively and in bad faith, and that he (the bank) must have known the facts without inquiry. The circumstances which will justify such an inference must, however, be pointed and emphatic, and must lead directly and irresistibly to the conclusion that the purchaser had notice before the presumption that he had purchased the note in good faith can be overthrown. Circumstances calculated to awaken suspicion are not sufficient. The ultimate fact to be found is not whether the endorsee might have ascertained, or could have known, that the note was fraudulently obtained, but whether he in fact knew it, or acted in bad faith in abstaining from inquiry. * * * As has been said, it is a question not of negligence or diligence, but one of honesty and good faith." *Tescher* v. *Merea* (1889), 118 Ind. 586, 21 N. E. 316. The foregoing decision, though rendered before the enactment of the Uniform Negotiable Instruments Act, clearly expresses a fair construction of that part of the law which reads as above stated, to wit: "The person to whom it is negotiated must have had * * * knowledge of such facts that his action in taking the note amounted to bad faith." Instructions Nos. 4 and 5, asked and re-

fused, were in exact accord with said act, and with the decision last quoted, and should have been given.

Appellant complains of the refusal of the court to give its sixth tendered instruction. The point made is that this instruction was intended to inform the jury that a note taken as collateral security for a pre-existing debt is protected as fully as a note taken for a new consideration. In other words, appellant asked that the jury be thus informed, in order that it might determine that there was a valuable consideration passed for this note. We find in instruction No. 1, given by the court, this expression: "Said note was delivered to the payee (elevator company), and by said company, and before maturity was transferred by endorsement, for a valuable consideration." Thus the court told the jury that a valuable consideration was passed, and that it need not further consider that question. As this declaration of the court was materially favorable to appellant, no harm was done appellant by the refusal to give the instruction asked.

Appellant complains of the court's refusal to give its instructions Nos. 7 and 8, and makes the point that it was the duty of appellee when representations were made to him for the purpose of inducing him to purchase the stock "to use diligence to ascertain whether the representations were false, and if false to rescind his contract, and return, or offer to return, the stock." It may be first observed that the proposition that appellee should have used diligence to ascertain whether the representations were false, ignores entirely the basis of a cause of action for false representation. Such an action may be maintained only upon the proposition that the person complaining was deceived, and was led to believe, and, because of the deception and inducement, he relied upon the representations. If he did not so rely, but acted upon informa-

tion otherwise gathered by his own inquiry as to whether such statements were true, then he could not successfully maintain that he was damaged by the representations made. He did not rely nor act upon the same.

As to that portion of this tendered instruction which states that it was the duty of the purchaser of the stock to return the same promptly and rescind his contract, it may be said that one of the issues made in this action was that the stock was absolutely worthless, and the court instructed the jury that in order to make his defense it was incumbent upon the defendant to prove that the stock was of no value whatever. This informed the jury that if the stock was of any value, the defense attempted was not sustained. The decisions cited by appellant, to the effect that one who is in position to learn cannot defer the matter of inquiry until, by reason of his silence, others are induced to act on the theory that he is satisfied, and to thus place themselves at a disadvantage in the event he later is permitted to rescind, as in *Marion Trust Co.* v. *Blish* (1908), 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347, are not in point here. In such case the continuation of the relation of stockholder, and the leaving of the stock subscription among the assets of the company, might induce others to extend credit to the company, and such parties as extend credit, under such circumstances may well object to a later rescission. The evidence tended to show that the note here involved was purchased by the bank about five days after it was executed. The appellee was made a director of the company about two months thereafter, when he for the first time began to understand the company's financial condition, and that until then he continued to rely upon the representations which caused him to buy the stock. His delay thereafter, or his failure

to then promptly rescind, did not harm the bank, as it did nothing on account thereof. Appellee, if defrauded, was then entitled to rescind, so far as the interests of the assignee bank were concerned. But, as the jury found the stock was worthless, he was under no obligation to surrender the same. The refusal to give requested instructions Nos. 7 and 8 was not error.

Appellant complains that the eighth instruction given by the court is also erroneous in that it states that appellee, in order to sustain his defense, "only had to prove that the stock was of no value at the time he purchased it." Appellant asserts that it was necessary, in addition, that appellee prove that appellant purchased said note with notice of the want or failure of consideration. It is enough to say that instruction No. 8 is correct as far as it goes; that it did not purport to cover all the elements of the case; and the jury was, in other instructions given by the court, properly informed as to such other elements as were in issue.

Appellant asserts error in that the court permitted several persons to testify that the elevator company had, through its president, made to each of them similar representations for the purpose of inducing each of them to purchase stock in said company at about the same time that appellee purchased his stock. The gist of a defense based on the charge of false representations is the intent of the party making the representations to deceive and thereby to induce. One method of proving a secret intent is by showing the concurrence of actions or declarations tending to a similar result and having a similar purpose, and to prove such intent similar statements and declarations are admissible. 1 Elliott, Evidence §§161, 162; *Continental Ins. Co., etc.* v. *Insurance Co., etc.* (1892), 51 Fed. 884,

2 C. C. A. 535; *Hartford Life Ins. Co.* v. *Hope* (1907), 40 Ind. App. 354, 81 N. E. 595, 1088.

It is not material that these declarations made to others were not made in the presence of any officer or representative of the appellant bank. In order to establish the element of fraud involved in the issue, it was necessary and proper that the appellee show fraudulent intent of the party who procured from him the note sued upon, and as the bank at that time had no relation to the transaction, it would be unreasonable to allow appellee to put in evidence only such transactions, statements or matters as happened in the presence of the bank. The evidence was properly admitted.

The only remaining proposition advanced by appellant is that the verdict is not sustained by sufficient evidence, because the evidence showed that appellant purchased the note in due course before maturity and for a valuable consideration "without notice of any defense or of any infirmity in the note, and that circumstances attending the purchase of said note do not show a lack of honesty and good faith on the part of appellant." In view of our conclusion, this proposition is not at this time of any importance. In connection with this point, appellant further says that the evidence does not show a prompt rescission and the return of, or an offer to return, the stock. What we have said hereinbefore disposes of this.

Because of the court's refusal to give instructions Nos. 4 and 5 requested by appellant the judgment below is reversed.

Townsend, J., not participating.

## ON PETITION FOR REHEARING.

HARVEY, J.—Appellee, in support of its petition for a rehearing, respectfully presents that this court, in holding that instructions Nos. 4 and 5, asked by the appellant, should have been given, overrules *Boxell* v. *Bright Nat. Bank* (1915), 184 Ind. 631, 635, 112 N. E. 3.

Appellee overlooks an essential difference. The action in the Boxell case, having been "commenced before the Negotiable Instruments Act, of 1913 (Acts 1913 p. 120, §9089a Burns 1914), became effective," that statute did not apply. The rule as it existed prior to that statute was properly stated in the Boxell case. The note here sued upon was executed in October, 1913, and is governed by that statute, and instructions Nos. 4 and 5 announced the rule under the statute.

Appellee asserts that, even though said instructions were proper, the substance was covered by No. 10, which was given; hence there was no harmful error in the refusal. We feel that this proposition was fully and properly dealt with in the opinion.

Appellee questions the application of the decision in *Tescher* v. *Merea* (1889), 118 Ind. 586, 21 N. E. 316, made by the court herein. The opinion expressly shows that the quotation of Judge Mitchell's language in said case was adopted as clearly expressing the rule to be applied under the Negotiable Instruments Act. No other use was made of said decision.

The petition for rehearing is overruled.

Townsend, J., did not participate.

NOTE.—Reported in 118 N. E. 813, 119 N. E. 711. See under (5) 20 Cyc 13; (8) 8 C. J. 1030.